## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARGARET HALL,

      Plaintiff,

v.                         Case No. 8:23-CV-1176-KKM-TGW

SANOFI-AVENTIS U.S. LLC,
and SANOFI US SERVICES, INC.

      Defendants.

_____/

## DEFENDANTS SANOFI-AVENTIS U.S. LLC AND
## SANOFI US SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Until recently, Plaintiff Margaret Hall's case was one of more than 10,000 cases pending in *In re Taxotere (Docetaxel) Product Liability Litigation* MDL (E.D. La., MDL No. 2740), where each plaintiff alleges she developed permanent hair loss as a result of taking Taxotere, a chemotherapy used to treat breast cancer. Ms. Hall alleges that she permanently lost her eyebrows after chemotherapy. Ms. Hall's claims against Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. (collectively, "Sanofi") must be dismissed for the same reasons hundreds of analogous cases in this litigation have also been dismissed.

*First*, Florida's four-year statute of limitations bars all of Ms. Hall's claims. Fla. Stat. § 95.11(3)(d), (i), (j). The statute begins to run *either* (1) when the plaintiff discovered facts giving rise to the cause of action, *or* (2) when the plaintiff should have

discovered these facts with the exercise of due diligence. *See* Fla. Stat. Ann. § 95.031(2). Ms. Hall alleges that she permanently lost her eyebrows by December 2010, six months after she completed chemotherapy; yet, she did not file her lawsuit until October 2019, more than nine years later. Ms. Hall further testified that one year after completing chemotherapy (in June 2011), she realized that her eyebrows were not going to come back. And Ms. Hall has always attributed the permanent loss of her eyebrows to chemotherapy. Ms. Hall, however, failed to investigate her claim until approximately 2016 when she saw a legal advertisement on television. Because Ms. Hall was aware or reasonably should have been aware of sufficient facts giving rise to her claim by June 2011 at the latest but did not file suit until October 2019, her claims are barred by Florida's four-year statute of limitations.

*Second*, there is no genuine dispute of material fact on proximate causation. Under the leaned intermediary doctrine, Sanofi's duty to warn runs to Ms. Hall's oncologist, Dr. Lewis Auerbach. Ms. Hall cannot establish proximate causation because, even assuming Taxotere's warning was inadequate, a different warning would not have changed Dr. Auerbach's prescribing decision. Instead, Dr. Auerbach testified that (1) a warning that "cases of permanent alopecia have been reported" in the Taxotere label would not have materially changed the way he assessed Taxotere from a risk-benefit perspective, and (2) he would still have prescribed Taxotere to Ms. Hall if he could go back to March 2010. As a result, Sanofi is entitled to summary judgment on all of Ms. Hall's claims because she cannot come forward with sufficient evidence to dispute Dr. Auerbach's testimony on proximate causation.

2

## LITIGATION BACKGROUND

### I.    MDL and MCL Background.

Sanofi manufactures Taxotere, a chemotherapy that was first approved by the FDA in 1996 to treat a variety of life-threatening cancers, including breast cancer. Taxotere is considered the standard of care for treatment of high-risk breast cancer populations and is on the World Health Organization's Model List of Essential Medicines, defined as "the most efficacious, safe and cost-effective medicines for priority conditions."

Before transfer, Plaintiff's case was pending in the Eastern District of Louisiana as part of *In re Taxotere (Docetaxel) Product Liability Litigation* MDL (E.D. La., MDL No. 2740), where thousands of other plaintiffs' cases have been consolidated for pre-trial purposes.[1]   Also pending is a New Jersey multi-county litigation ("MCL"), *In re Taxotere Litigation* (Sup. Ct. of N.J., Middlesex Co., No. 628), where another 149 plaintiffs' claims reside.

### II.    MDL and MCL Statute of Limitations Decisions.

In these consolidated actions, as part of an approved "bellwether" trial process, the courts permitted Defendants to move for judgment against 239 individual plaintiffs based on the applicable statute of limitations under Louisiana (one-year limitations

---

[1]      Docetaxel is the generic version of Taxotere.  In addition to Sanofi, generic manufacturers of docetaxel have also been named as Defendants in these cases, including, Sandoz Inc., Accord Healthcare, Inc., McKesson Corporation d/b/a McKesson Packaging, Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., Hospira, Inc., Sun Pharma Global FZE, Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd., Pfizer Inc., Actavis LLC f/k/a Actavis Inc., Sagent Pharmaceuticals, Inc., and Actavis Pharma, Inc.

period), Mississippi (three-year limitations period), and New Jersey law (two-year limitations period).[2] Defendants filed four motions for summary judgment in the New Jersey MCL, and, in the federal MDL, moved for summary judgment, judgment on the pleadings, or for an order to show cause against the other 235 plaintiffs.[3]

Defendants prevailed 237 times. *See Johnson*, 2019 WL 2995897, at *3–4 (granting Sanofi's motion as to plaintiffs Francis and Johnson under Louisiana law); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux)*, 2020 WL 8257755, at *1 (E.D. La. Jan. 23, 2020), *aff'd*, 995 F.3d 384 (5th Cir. 2021) (granting Sanofi's motion under Louisiana law); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Sanford)*, 2020 WL 4038971, at *1 (E.D. La. July 17, 2020) (granting Hospira's motion under Louisiana law); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Durden)*, 2020 WL 4228375, at *1 (E.D. La. July 23, 2020) (granting Sanofi's motion under Louisiana law), *aff'd*, 860 F. App'x 886 (5th Cir. 2021); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Greer)*, 2021 WL 230243, at *1 (E.D. La. Jan. 22, 2021) (granting Sanofi's motion for judgment on the pleadings

---

[2]     Under Louisiana law, the statute-of-limitations period is referred to as the period of "prescription." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Johnson)*, 2019 WL 2995897, at *2 (E.D. La. July 9, 2019) *aff'd*, 995 F.3d 384 (5th Cir. 2021).  The exceptions to that rule are detailed in the doctrine of "contra non valentem" and include discovery rule and fraudulent concealment equivalents. *Id.*  For ease of reference, Sanofi generally refers to the statute of limitations and the discovery rule throughout the Motion.

[3]     The MDL court's summary of these rulings is likewise described in its Transfer Order remanding this case and many others back to their respective district courts.  (Doc. 7 at 40–44, 48–50).  The MDL court deferred additional dispositive motion practice for all remaining cases to the remand courts.  *Id.* at 62 ("Receiving courts should also expect to address case-specific motions for summary judgment on dispositive issues, such as the statute of limitations and warnings causation.").

4893-0835-8263

under Mississippi law[4]); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Hughes)*, 2021 WL 6201313, at *1 (E.D. La. Apr. 28, 2021) (granting Accord's motion under Louisiana law); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Roach)*, 2021 WL 2042212, at *1 (E.D. La. May 21, 2021) (granting Sanofi's motion under Mississippi law); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Smith)*, 2021 WL 3006968, at *1 (E.D. La. July 14, 2021) (granting Sanofi's motion under Mississippi law); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Plaisance)*, 2022 WL 644166, at *1 (E.D. La. Feb. 22, 2022) (granting Hospira's motion under Louisiana law); *Adams v. Sanofi U.S. Services Inc.*, 2023 WL 4084975, at *1 (N.J. Super. Ct. Law Div. June 8, 2023) (granting Sanofi's motion against plaintiff Adams and attaching memorandum and opinion dismissing claims of four plaintiffs— Adams, King, Linton, and Massey—under New Jersey law).

In the only four cases addressing the statute of limitations on appeal, the Fifth Circuit has affirmed. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.* ("*Thibodeaux*"), 995 F.3d 384 (5th Cir. 2021) (affirming dismissal of Ms. Francis's, Ms. Johnson's, and Ms. Thibodeaux's claims as time-barred); *see also In re Taxotere (Docetaxel) Prods. Liab. Litig.* ("*Durden*"), 860 F. App'x 886, 891–92 (5th Cir. 2021) (affirming dismissal of Ms. Durden's claims as time-barred).

---

[4]      223 dismissals were a result of the MDL court's show cause process, in which the MDL court required certain Mississippi plaintiffs to show cause why their claims should not be dismissed under Mississippi's three-year statute-of-limitations period for the same reasons the MDL court dismissed the Plaintiff's claims in Ms. Greer's case.  (Doc. 5-110).  At the show cause hearing, "the Court considered and dismissed the claims of 89 Plaintiffs for the reasons articulated in *Greer*." *Id.* at 2–3. The MDL court later dismissed the claims of another 134 Plaintiffs "who notified Plaintiffs' Liaison Counsel of their intent not to appear at the show cause hearing" to dispute dismissal for the reasons articulated in *Greer. Id.* at 3.

4893-0835-8263

Although Florida recognizes a delayed discovery rule, both the MDL and MCL courts have rejected the invocation of analogous discovery rules under other states' laws. *Cf.* Fla. Stat. § 95.031*, with Thibodeaux*, 995 F.3d at 390 (discovery rule applies under Louisiana law where "the cause of action is not known or reasonably knowable by the plaintiff"); *Adams*, 2023 WL 4084975, at *3 (discovery rule applies under New Jersey law until "the injured party discovery or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim" (citation omitted)).

The Fifth Circuit has twice held, under Louisiana law, that any plaintiff attributing her initial hair loss to chemotherapy (as all must), was required to investigate a possible claim within a reasonable time after sustaining permanent hair loss. The court also held that plaintiffs only acted reasonably if they investigated "*Taxotere* as a potential cause" of their injury. *Thibodeaux*, 995 F.3d at 392–93 (emphasis added); *see also Durden*, 860 F. App'x at 894. The Fifth Circuit further held that, based on articles and studies cited in plaintiffs' Master Complaint dating back to 2006, the cause of plaintiffs' injury was reasonably knowable well before they filed suit in 2016. *Thibodeaux*, 995 F.3d at 394; *Durden*, 860 F. App'x at 392–93. Under the discovery rule's objective standard, plaintiffs' claims were time-barred because each was on inquiry notice of the cause of her injury but failed to investigate. *Thibodeaux*, 995 F.3d at 394; *Durden*, 860 F. App'x at 392–93.

In the New Jersey MCL, the court similarly rejected four plaintiffs' claims that the discovery rule tolled the statute until two years before filing. Adams, 2023 WL

4084975, at *8–11.  The court held each plaintiff knew she was injured six months following chemotherapy when her hair loss persisted.  *See, e.g.*, *id.* at 8.  The court also rejected plaintiffs' arguments that they did not know their injury was permanent, finding an objectively reasonable person would know her hair would not grow back when it failed to do so for years following treatment.  *Id.* at 9.  Finally, the MCL court held each plaintiff should have known her injury was caused by a third party because the case involved a "straightforward cause and effect relationship" between chemotherapy and hair loss—each plaintiff knew the cause of her initial hair loss and each should have realized the cause of her permanent hair loss.  *Id.*  Yet, plaintiffs failed to diligently investigate or pursue their claims, which the MCL court held prevented the discovery rule from tolling the statute.  *Id.* at 10.

Finally, to date, no plaintiff has successfully argued that an equitable tolling principle, such as the fraudulent concealment exception, applied, because no plaintiff alleged (or could allege) that Sanofi did some extraordinary act to conceal the plaintiff's claims from her.  Instead, each plaintiff, like Ms. Hall, alleged only run-of-the-mill failure-to-warn allegations—*i.e.*, that the defendant concealed the dangers of the product from plaintiff and the medical community—that are insufficient to invoke an extreme remedy like equitable tolling.  *See Thibodeaux*, 995 F.3d at 395 (concluding the fraudulent concealment exception did not apply based on "our holding that Appellants here were not prevented from availing themselves of their causes of action."); *Durden*, 860 F. App'x at 894 n.3 (same); *Plaisance*, 2022 WL 644166, at *5 (Louisiana law); *Greer*, 2021 WL 230243, at *4 (Mississippi law); *Adams*, 2023 WL

4084975, at *12 (New Jersey law).  Were it otherwise, the statute would be tolled in every case bringing a generic failure-to-warn claim.

## III.   MDL Proximate Causation Decisions.

The MDL court and Fifth Circuit have also both addressed proximate causation.  *See, e.g.*, *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704 (5th Cir. 2021).  The *Phillips* decision, which affirmed the MDL court's dismissal of the plaintiff's claims on summary judgment, is instructive.  Applying Louisiana law, the Fifth Circuit held that the dispositive question is whether the physician would have changed his or her prescribing decision if the physician had been provided a different warning.  *Id.* at 710 (evidence must "create a genuine dispute of material fact as to whether a warning that Taxotere caused potentially permanent—as opposed to temporary—alopecia would have changed [the physician's] prescribing decision."); *accord Salinero v. Johnson & Johnson*, 995 F.3d 959, 966 (11th Cir. 2021) (granting summary judgment where doctor testified that undisclosed risk would not have changed his prescribe decision).  The Fifth Circuit declined to adopt a standard that would allow a plaintiff to offer testimony about patient choice to overcome that of her prescribing physician.  Instead, when a prescribing physician testifies that the alleged non-disclosed risk does not materially alter the physician's risk-benefit analysis of the drug, a plaintiff cannot avoid summary judgment by claiming that *she* would have chosen a different medicine had *she* known of the risk.  *Phillips*, 994 F.3d. at 708–10.

4893-0835-8263

## JOINT STATEMENT OF UNDISPUTED FACTS

Sanofi has submitted a separate Joint Statement of Undisputed Facts ("JSUF") as required by this Court's Case Management and Scheduling Order. (Doc. 32). The pertinent facts are cited in the Argument section below.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

Sanofi provides the following additional material facts in support of its Motion for Summary Judgment. Although Plaintiff was unwilling to concede the below facts, each is relevant, accurate, and supported by citations to the record.

1.    Taxotere was first approved for use in the United States in 1996, and its FDA-approved labeling has always warned that hair loss is one of the drug's most common side effects. *Compare* Ex. A, 1996 Taxotere Labeling, *with* Ex. B, 2018 Taxotere Labeling.

2.    In December 2015 Sanofi, after discussions with FDA, added the following language to the post-marketing section of Taxotere's package insert: "cases of permanent alopecia have been reported." Ex. C, 2015 Taxotere Labeling.

3.    Ms. Hall alleges that she developed "Permanent Chemotherapy Induced Alopecia," which she defines as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." First Amended Master Complaint, Doc. 5-11 ¶ 180; Short Form Complaint ("SFC"), Doc. 1 at 1 (adopting allegations of First Amended Master Complaint), ¶ 5 (alleging Ms. Hall was injured in Florida).

4.     Ms. Hall alleges she began to experience permanent alopecia by December 24, 2010, six months after she completed chemotherapy treatment on June 24, 2010.  First Amended Master Complaint, Doc. 5-11 ¶ 180; SFC, Doc. 1 ¶ 10.

5.     Ms. Hall felt that there was "no other reason" but chemotherapy for the loss of her eyebrows.  Ex. D, Hall Dep. (Vols. I & II), at 105:13–106:1.

6.     The hair on Ms. Hall's scalp, for example, began to regrow approximately two months after she completed chemotherapy.  Ex. D, Hall Dep. (Vols. I & II), at 203:12–24.

7.     The hair on Ms. Hall's scalp regrew fully, although thinner, approximately a year after chemotherapy, which she believes "in retrospect" should be part of her claim in this lawsuit.  Ex. D, Hall Dep. (Vols. I & II), at 186:19–187:19; 213:18–214:7.

8.     Approximately one year after chemotherapy, Ms. Hall realized that her eyebrows were not going to come back.  Ex. D, Hall Dep. (Vols. I & II), at 211:16–212:6.

9.     If Dr. Auerbach could go back to March 2010, he would still recommend Taxotere and Cytoxan to Ms. Hall.  Ex. E, Auerbach Dep., at 53:18–22.

10.    If the Taxotere package insert included the phrase, "cases of permanent alopecia have been reported," this warning would not have materially changed the

4893-0835-8263

way Dr. Auerbach assessed Taxotere from a risk-benefit perspective. Ex. E, Auerbach Dep., at 72:17–73:11.

## LEGAL STANDARD

The Court must enter summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). It may do so by showing that the nonmoving party lacks evidence on an essential element of its case with respect to which the nonmoving party has the burden of proof. *Id*. at 322–23. The nonmoving party then must come forward with sufficient evidence from which a jury could reasonably find in its favor. *Id*.; *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *see also Hall v. Target Corp.*, 2023 WL 4686093, at *2 (M.D. Fla. July 21, 2023).

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Florida applies the "most significant relationship test" to determine the choice of law for tort actions. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). Ms. Hall alleges that she was treated with Taxotere and developed her injury in Florida. JSUF ¶¶ 3, 4. As a result, Florida law applies to Ms. Hall's claims. *See Bishop*, 389 So. 2d at 1001.

## ARGUMENT

Sanofi requests that the Court enter summary judgment on all of Ms. Hall's claims for two reasons. First, it is uncontroverted that Florida's four-year statute of

limitations bars Ms. Hall's claims because she discovered or should have discovered facts giving rise to her causes of action by June 2011 at the latest, but she did not file suit until October 2019—more than four years too late.  Second, under the learned intermediary doctrine, Dr. Auerbach's testimony forecloses Ms. Hall's ability to establish proximate causation.

## I.    Florida's Four-Year Statute of Limitations Bars Ms. Hall's Claims.

Ms. Hall brings product-liability, fraud, and warranty claims, all of which are subject to Florida's four-year statute of limitations.  Fla. Stat. § 95.11(3)(d), (i), (j).  The statute begins to run "from the time the cause of action accrues."  *Id.* § 95.031(2).   In Florida, the cause of action accrues *either* (1) when the plaintiff discovered facts giving rise to the cause of action, *or* (2) when the plaintiff should have discovered facts with the exercise of due diligence.  *Id.*  In other words, actual or constructive knowledge is sufficient to trigger the statute of limitations.  *See Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991).

A plaintiff's actual or constructive knowledge does not need to rise to the level of legal certainty for the statute of limitations to run.  *See Bogorff*, 583 So. 2d at 1004 ("The knowledge required to commence the limitation period, however, does not rise to that of legal certainty."); *Doe v. Cutter Biological*, 813 F. Supp. 1547, 1555 (M.D. Fla. 1993) ("Florida law does not require that Plaintiff know the full extent of [her] injury.").  Instead, Florida law is clear that a plaintiff "need only have notice, through the exercise of reasonable diligence, of the *possible* invasion of [her] legal rights." *Bogorff*, 583 So. 2d at 1004; *see also In re Bos. Sci. Corp., Pelvic Repair Sys. Prods. Liab.*

12

*Litig.*, 2015 WL 1405493, at *4 (S.D.W. Va. Mar. 26, 2015) ("Florida law only requires that a plaintiff be aware of her injuries following exposure to the alleged defective product."), *aff'd*, 627 F. App'x 231 (4th Cir. 2015).

**A.    Ms. Hall Discovered Facts Giving Rise to Her Cause of Action by June 2011 at the Latest.**

Both the operative pleadings and uncontroverted facts show Ms. Hall has actual knowledge that she suffered from permanent hair loss caused by chemotherapy at least eight years before filing suit.  Ms. Hall pleaded that she sustained her injury by December 2010.  JSUF ¶ 8.  Ms. Hall has also stated in discovery the she has suffered permanent/persistent loss of her eyebrows, eyelashes, and genital hair since December 2010.  *Id.* ¶ 7.  But even setting aside Ms. Hall's pleadings and discovery responses, her testimony establishes that she was aware of her permanent hair loss and its potential cause by June 2011 at the latest.

Ms. Hall was diagnosed with breast cancer on January 22, 2010.  *Id.* ¶ 2.  To treat her breast cancer, Ms. Hall received a chemotherapy regimen with Taxotere from March 11, 2010, to June 24, 2010.  *Id.* ¶ 4.  Ms. Hall expected her hair loss to be temporary.  *Id.* ¶ 9.  She began to lose the hair on her head after her second infusion of chemotherapy, and she also lost the hair from her eyebrows during chemotherapy.  *Id.* ¶¶ 10–11.  At that time, Ms. Hall felt that there was "no other reason" but chemotherapy for the loss of her eyebrows.  Ex. D, Hall Dep. (Vols. I & II), at 105:13–106:1.

Although Ms. Hall experienced hair regrowth to some areas of her body after chemotherapy, her eyebrows did not regrow.  *Id.* ¶ 12.  The hair on Ms. Hall's scalp, for example, began to regrow approximately two months after she completed chemotherapy.  Ex. D, Hall Dep. (Vols. I & II), at 203:12–24.  About one year after chemotherapy, however, Ms. Hall testified that she realized that her eyebrows were not going to come back.  *Id.* at 211:16–212:6.  Ms. Hall thought that chemotherapy was the reason that her eyebrows did not regrow.  JSUF ¶ 13.  And over the months and years after completing chemotherapy, she continued to assume that her eyebrows were not regrowing because of the chemotherapy.  *Id.* ¶ 14.  Ms. Hall has never attributed her hair loss to anything other than chemotherapy.  *Id.* ¶ 15.

Ms. Hall's testimony provides all that is needed for the statute of limitations to run.  *See Bogorff*, 583 So. 2d at 1004.  No later than June 2011, Ms. Hall knew that her eyebrows were not coming back, even though she expected her hair loss after chemotherapy to be temporary.  Ms. Hall has always attributed this unexpected permanent hair loss to her chemotherapy.  Ms. Hall had knowledge of sufficient facts giving rise to her cause of action in June 2011, and Florida's four-year statute of limitations expired in June 2015.  Because Ms. Hall waited to file her lawsuit until October 2019, all of her claims are time-barred.

**B.    A Plaintiff in Ms. Hall's Position Exercising Due Diligence Would Have Discovered Facts Giving Rise to Her Cause of Action Before October 2, 2015.**

Even if Ms. Hall did not have actual knowledge of sufficient facts (an assumption directly contradicted by her testimony), a reasonable plaintiff in her

position would have discovered these facts through the exercise of due diligence.  Fla. Stat. Ann. § 95.031(2)(b) (limitations period begins to run on "the date that the facts giving rise to the cause of action were discovered, *or should have been discovered with the exercise of due diligence*" (emphasis added)).  Ms. Hall knew of her injury and attributed it to chemotherapy no later than June 2011.  But Ms. Hall made no attempt to exercise reasonable diligence to investigate her claim until seeing an advertisement on television in approximately 2016.  Ms. Hall never spoke to a physician about her lack of eyebrow regrowth.  JSUF ¶ 16.  She never researched her lack of eyebrow regrowth after chemotherapy.  *Id.* ¶ 17.  And no one ever suggested to Ms. Hall that her lack of eyebrow regrowth had to do with anything other than chemotherapy.  *Id.* ¶ 18.

Florida law charges Ms. Hall with all of the information a reasonable investigation would have uncovered.  *See Steiner v. Ciba-Geigy Corp.*, 364 So. 2d 47, 52 n.4 (Fla. 3rd DCA 1978) ("The means of knowledge are the same as knowledge itself."); *Bogorff*, 583 So. 2d at 1004 (imputing knowledge of accessible medical records to plaintiffs under Fla Stat. § 95.11).  Here, the First Amended Master Complaint cites numerous publicly available news articles and studies associating Taxotere with permanent hair loss in December 2010 (when Ms. Hall stated she experienced her injury), in June 2011 (when she testified that she knew her eyebrows were not going to come back), and certainly before October 2015 (four years before Ms. Hall ultimately filed her lawsuit).  JSUF ¶¶ 8, 19, 24; Ex. D, Hall Dep. (Vols. I & II), at 211:16–212:6.

15

This information would have been uncovered by any plaintiff, including Ms. Hall, exercising reasonable diligence. *See, e.g.*, *Thibodeaux*, 995 F.3d at 393 (finding evidence "relevant to what a reasonable inquiry" by plaintiffs would have uncovered was publicly available as early as 2006 when "women who called themselves 'Taxotears' formed a group with an online presence"; this was followed by a 2010 Canadian newspaper article, and coverage by CBS News online). Ms. Hall is charged with this information even though she made no inquiry. As a result, her claims are also time-barred under the objective discovery rule standard.[5]

### C. Fraudulent Concealment Does Not Apply to Toll the Statute of Limitations.

Ms. Hall may argue that her claims are saved by Florida's fraudulent concealment exception, an argument that the MDL and MCL courts have rejected against every plaintiff to raise it under state laws analogous to Florida's. *See Thibodeaux*, 995 F.3d at 395 (concluding the fraudulent concealment exception did not apply based on "our holding that Appellants here were not prevented from availing themselves of their causes of action."); *Durden*, 860 F. App'x at 894, n.3 (same); *Adams*, 2023 WL 4084975, at *12.

---

[5]    The discovery rule does not apply to Ms. Hall's FDUPTA claim, and this claim should be dismissed because Ms. Hall received Taxotere in 2010 and filed her lawsuit more than four years after her treatment. *See Ellerbee v. Ethicon, Inc.*, 2020 WL 5230595, at *5 (M.D. Fla. Sept. 2, 2020) ("[U]nder FDUTPA, the limitations period begins to run when the product is purchased."); *Martin v. World Wide Child Care Corp.*, 2017 WL 9618895, at *4 (S.D. Fla. Dec. 1, 2017) ("FDUPTA does not provide for the delayed discovery rule." citing *McKissic v. Country Coach, Inc.*, 2008 WL 616093, at *4 (M.D. Fla. Mar. 3, 2008))).

To invoke fraudulent concealment tolling under Florida law, Ms. Hall must establish "successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of [her] claim." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1228 (S.D. Fla. 2021) (quoting *Burr v. Philip Morris USA Inc.*, 2012 WL 5290164, at *3 (M.D. Fla. Sept. 28, 2012), *aff'd*, 559 F. App'x 961 (11th Cir. 2014)).  She cannot for two reasons.

First, there is no evidence that Sanofi took affirmative steps to conceal Ms. Hall's claims from her.  Florida law is clear that a generic failure-to-warn claim, as alleged here, does not qualify as fraudulent concealment sufficient to toll the running of the statute.  *See Lewis*, 530 F. Supp. 3d at 1228 ("Critically, however, the 'fraudulent means' alleged must go beyond mere non-disclosure, and must constitute active and willful concealment." (cleaned up)); *Rigopoulos v. Knauf Gips KG*, 2023 WL 1765373, at *2 (M.D. Fla. Feb. 3, 2023) (granting summary judgment and holding fraudulent concealment did not apply because the plaintiff identified no evidence that the defendants "induced them to forbear filing suit within the limitation period.").  Ms. Hall can only point to Sanofi's alleged non-disclosure of potential side effects—the same conduct that underpins her substantive claims.  Without more, Ms. Hall cannot invoke fraudulent concealment.  *See Rigopoulos*, 2023 WL 1765373, at *2; *see also Greer*, 2021 WL 230243, at *4 (declining to apply fraudulent concealment doctrine because "the law is clear that Sanofi's alleged concealment of the risks associated with Taxotere

cannot form the basis of both [the plaintiff's] substantive claim and her claim for tolling") (applying Mississippi law).

Second, Ms. Hall could never succeed on an argument that she "exercised reasonable care and diligence in seeking to discover the facts that form the basis of [her] claim." *Lewis*, 530 F. Supp. 3d at 1228. Ms. Hall knew that her eyebrows were not coming back and attributed this to her chemotherapy by June 2011 at the latest. JSUF ¶¶ 13–15; Ex. D, Hall Dep. (Vols. I & II), at 211:16–212:6. Yet, she conducted no investigation into her claims. JSUF ¶¶ 15–18. Had she done so, Ms. Hall would have discovered information confirming what she already knew (and what she now relies on in asserting her claims)—information linking Taxotere to permanent hair loss. *Thibodeaux*, 995 F.3d at 394; *Durden*, 860 F. App'x at 392–93. Fraudulent concealment is inapplicable here, and Ms. Hall's claims are time-barred.

## II. Ms. Hall Cannot Establish Proximate Causation Under the Learned Intermediary Doctrine.

In Florida, a plaintiff asserting a failure-to-warn claim must show "(1) that the product warning was inadequate; (2) the inadequacy proximately caused [her] injury; and (3) that [she] in fact suffered an injury from using the product." *Cates v. Zeltiq Aesthetics, Inc.*, 2023 WL 4671283, at *3 (11th Cir. July 21, 2023); *see also Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. Dist. Ct. App. 2009).

For prescription drugs such as Taxotere, a "manufacturer's duty to warn of the drug's dangerous side effects is directed to the physician rather than the patient." *Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990); *see also Cates*, 2023 WL

4671283, at *3.   This duty runs to the physician because he or she is a "'learned intermediary' between the manufacturer and the patient, 'weighing the potential benefits of a device against the dangers in deciding whether to recommend it to meet the patient's needs." *Salinero*, 995 F.3d at 964 (citation omitted).   To meet the causation requirement in a prescription drug case, the plaintiff "must show that her treating physician would not have used the product had adequate warnings been provided." *Id.* (citation omitted).

The learned intermediary doctrine also applies to Ms. Hall's misrepresentation and fraud-based claims because they "fall within the umbrella of a failure to warn claim." *Gibson v. C R Bard Inc.*, 2023 WL 3563461, at *6 (M.D. Fla. Mar. 22, 2023); *see also Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1352–53 (S.D. Fla. 2019) ("Additionally, whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn."), *aff'd*, 995 F.3d 959.

Assuming the label is inadequate, the plaintiff cannot establish proximate causation "so long as the physician . . . would still recommend the [drug] despite those risks." *Salinero*, 995 F.3d at 964; *see also Benestad v. Johnson & Johnson*, No. 20-60496-CIV, 2022 WL 5239882, at *6 (S.D. Fla. Mar. 28, 2022) (granting summary judgment under learned intermediary doctrine where "the undisputed record evidence show[ed] that the treating physician's prescribing decision would not have been altered by the undisclosed risk"); *Phillips*, 994 F.3d at 710 (on summary judgment, evidence must "create a genuine dispute of material fact as to whether a warning that Taxotere caused

19

potentially permanent—as opposed to temporary—alopecia would have changed [the physician's] prescribing decision.") (applying Louisiana law).

Ms. Hall cannot meet her burden to establish proximate causation for her failure-to-warn, misrepresentation, and fraud claims because she failed to elicit testimony that Dr. Auerbach would have prescribed a non-Taxotere treatment to her had a different Taxotere warning been given. Instead, Dr. Auerbach testified that a different warning (here, "cases of permanent alopecia have been reported") would not have materially changed the way he assessed Taxotere from a risk-benefit perspective. Ex. E, Auerbach Dep., at 72:17–73:11; *see Phillips*, 994 F.3d at 709 (identifying testimony from treating oncologist "that the additional warning regarding permanent alopecia has not materially altered his risk-benefit assessment of Taxotere."). Dr. Auerbach further testified that in light of Ms. Hall's cancer type and characteristics, Dr. Hall believed chemotherapy gave Ms. Hall the best chance to beat her cancer and prevent recurrence. JSUF ¶ 28. And critically, Dr. Auerbach testified that if he could go back to March 2010, he would still recommend Taxotere to Ms. Hall. Ex. E, Auerbach Dep., at 53:18–22.; *see also Salinero*, 995 F.3d at 964. On this record, Dr. Auerbach's testimony is dispositive on proximate causation. [6]

---

[6]    Ms. Hall's fraud-based claims are also insufficiently pled under Federal Rule of Civil Procedure 9(b). SFC, Doc. 1 ¶ 13. In ruling on Defendants' Motion to Dismiss the First Amended Master Complaint in 2017, the MDL court recognized the "limitations" associated with formulating fraud-based allegations within a Master Long Form Complaint. *See* **Ex. F**, Hr'g Tr. 22:22–23:7 (Aug. 30, 2017) (Engelhardt. J., presiding). While the MDL court did not dismiss fraud-based counts from the MDL entirely at that time, it specifically ruled that any allegations of fraud must be "perfected within the short form complaints filed in the individual member cases." *Id.* at 23:4–7. Ms. Hall, however, has pleaded no facts in her SFC supporting her fraud-based claims, and the time for

## CONCLUSION

For these reasons, Sanofi requests the Court grant its motion for summary judgment on all of Ms. Hall's claims.

Dated: August 11, 2023

Respectfully submitted,

*/s/ Brian T. Guthrie*
Brian T. Guthrie
Florida Bar No. 84232
SHOOK, HARDY & BACON
100 North Tampa Street, Suite 2900
Tampa, FL 33602-5810
Telephone: (813) 202-7100
Facsimile: (813) 221-8837
Email: bguthrie@shb.com

Adrienne L. Byard (KS Bar No. 60843)
(Admitted *Pro Hac Vice*)
SHOOK, HARDY & BACON
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
Email: abyard@shb.com

*Attorneys for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc., f/k/a Sanofi-Aventis U.S. Inc.*

---

amending her SFC has passed.  *See generally* SFC, Doc. 1; Doc. 8 at 20–21 ("All deadlines for Plaintiffs to amend their individual complaints without leave of court have passed.").

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 11, 2023, a true and correct copy of the

foregoing was filed through the CM/ECF system, which will serve an electronic copy

on all counsel of record.

<u>/s/ Brian T. Guthrie</u>
Attorney

4893-0835-8263